Good morning. May it please the Court, my name is Jade Lundell. I'm with the Law Offices of Marks & Acklin in Los Angeles, California, and I represent the Petitioner in this matter. I would like to reserve one or two minutes for rebuttal or whatever time I have left. With regard to the instant case, the Petitioner was seeking asylum, withholding of removal, and withholding under the Convention Against Torture with voluntary departure and the alternative. The immigration judge denied his applications for asylum, withholding in the Convention Against Torture, but granted involuntary departure. The Board of Immigration Appeals affirmed without opinion. Where the Board of Immigration Appeals summarily affirms an immigration judge's decision pursuant to the Streamlining Regulation at 8 CFR 3.1, the Ninth Circuit reviews the immigration judge's order, the underlying record. Under the Substantial Evidence Standard, the Court must uphold the immigration judge's conclusions if they are supported by reasonable, substantial, and probative evidence in the record. The main issues in this case are actually, first, the issue of credibility in this case we do not believe is at actually at issue. The immigration judge and the Board of Immigration Appeals were silent on the issue of credibility. And where the IJ and the BIA are silent on credibility, this Court will presume credibility on the part of the Petitioner. So assuming that that is correct, they were taking the veracity and the truth of the Petitioner's testimony as true. What does concern us, and is a significant issue, is that the immigration judge misstated numerous facts in his oral decision that did not accurately reflect the testimony or the asylum application of the Petitioner. And in that regard, we believe that substantial evidence does not support the finding of the immigration judge that in the context of this person, the Petitioner is a Coptic Christian Orthodox man from Egypt who had lived his life, actually until 1999, going back and forth as an F1 student, family, owned a business in Cairo. They lived comfortably. And he had intended to spend his future in Egypt until the string of incidents occurred. And the fact that the judge misstated or was not paying attention or not clearly understanding the testimony of the Petitioner, we believe harmed the Petitioner's case, and that this, the facts and evidence, which this Court can look to, because the BIA affirmed with that opinion, rise to the level of persecution, that they established past persecution and a well-founded fear of future persecution. So as I understand your argument, the IJ found he didn't meet his standard of proof, so it's a nexus issue, right? And what you're saying is that the evidence compels just the opposite result. Well, correct. Yes. For the most part. Not that reasonable fact-finders could go either way, that a reasonable fact-finder would have to find asylum on the basis of this record properly understood. Yes, Your Honor. And I can explain further. The immigration judge incorrectly stated that Petitioner, that Petitioner received one phone call, or that his mother even received one threatening, there was one threatening phone call, and that his mother would be a good corroborating witness, because she witnessed, was there for the vandalism of their home in Cairo. Now, just to recap- Incidentally, was the mother in the United States? There was some confusion on- She was in the United States at that time. But she was ill or something, and- She had an elevated sugar level for diabetes, and they were very concerned with a potential coma or something. She didn't think she could withstand the stress of the procedure. Correct. Now, this particular Petitioner had had an apartment building go in near his apartment building in Cairo. The neighborhood changed from many Christian families to just three or four Christian families left, and there was an extreme Muslim presence that was building in his area. Two brothers, who Respondent refers to in its brief, actually not solely two brothers who were leading this, but they were leading followers who were, in Petitioner's testimony, changing their ways, becoming much more extreme in their ways. They pressured Petitioner to come to some event, which he resisted at first, and eventually he did at someone's apartment, where they tried to convert him, and they used Islamic verses from the Quran at the end in a threatening manner to him as a Christian. Ultimately, that was in September 1999. On September 13th, 1999, the same month, he was driving as he normally does and would be easily traceable to his church and then to his snooker group, which is in Britain and in Egypt is Billiards. But Petitioner is a world champion representative in Billiards, so he's actually well-known in Egypt. So anybody could trace his pattern, and then cars stopped. Several men jumped out, exclaiming verses, and beat him. So he spent 10 days in the hospital. When he was released, there was some damage to his car subsequently, and then he was scared, so he came here. And then subsequently, when his mother was here, their home was vandalized, and a Muslim Quranic note was left in their home. So it would be then, I guess, what on the modus operandi of the assailants matching the Muslim brothers' verses during the attack that should have compelled the immigration judge to conclude that it was a racially motivated attack, even though he couldn't identify who his assailants were. Right, except the judge incorrectly attributed this possibly to coincidence, or that potentially Petitioner was dressed like a Muslim, or that he was part of the attack, but all of these things are not within the facts and evidence. So it's conjecture on the part of the immigration judge, which cannot be supported by substantial evidence. There's nothing to support that in the record. Well, I hear your point, and I think it's a good one. But the concern that I have is, you're asking the fact finder to make an inferential leap from circumstantial evidence. Right. And it's not direct evidence, and nexus is the whole issue here that we're wrestling with. Yes. So what can you point to besides the modus operandi that should have compelled the immigration judge to conclude that that particular assault was related directly to efforts by the two Muslim brothers to convert him? The timeline, the chronology and the timeline of Petitioner coming back from the United States in 1999, September, staying in his family's home, noticing that the Christians, most of them had moved out, and that this building with the extremist Muslims had come in, invited him to something, attempted to try and convert him. He stood up to them with his Christian beliefs, and he challenged them, and they started chanting negative verses against him. Subsequently, only subsequently to that, not before that, he started receiving threatening telephone calls, at least five or six, with the exact same verbatim verse from the Quran, which talks about harm to, I believe, harm to Christians and taking their wealth. So there were several phone calls, a string of phone calls, and then the attack that put him in the hospital for 10 days with possible internal injuries. And then subsequently, there was a vandalism in the home with a Quranic verse-based message, I think. I know it was something about Islam saves or Islam lives, so it might not have been Quranic verse. So the timeline, the fact that he lived his whole life there, back and forth, and had experienced some discrimination, but not persecution. And the, just to make sure I understand the record, the break-in at the apartment occurred after the mother had left Egypt to come to the United States and was as a result of a phone call from an uncle or something? Yes, the uncle telephoned her and let her know that the home had been broken into, that it had been vandalized. She went back, took a look in, saw what had happened to the home, saw the note, and did not stay there. She stayed someplace else. Okay, so that's why the IJ said he wanted to hear from the mother, because she'd actually seen the note and the damage to the apartment. Correct. But in this case, just to speak to that for a moment, the corroborating witness issue, the immigration judge was asking for corroborating witness, testimony, or evidence prior to Petitioner ever taking the stand, prior to Petitioner ever opening his mouth to articulate his set of facts, and prior to the judge having the opportunity to evaluate his veracity. So in that instance, it concerned us that there either may have been a preconceived notion on the part of the immigration judge going into this, and additionally, the judge had commented that even if it was solely for the purpose of testifying to the honesty and veracity of the Petitioner, in that case, you could have had one or a hundred witnesses that came up and said, he's a truthful, honest guy, but they wouldn't have added to the facts of the case. They'd only have supported what we already know, which is that Petitioner was a credible Petitioner. So that's not even an issue. So the corroborating witness issue we don't think should be considered as something central to this case. Even in a circumstantial case where there's a question on nexus, that's the problem I'm having with the evidence compels the opposite result. Yes, because in an asylum case, a Petitioner's testimony, if he's found credible, can solely on its own be sufficient to establish that the facts and evidence rise to persecution. It still has the burden of proof. It does have the burden of proof. It's no different than a civil case where the plaintiff always bears the burden with regard to the elements of his or her claim. He does bear the burden of proof, but any corroborating witness testimony was not explained thoroughly by the immigration judge as to why that would add to the facts of the case when nobody else had any other facts that they could add. And if he was found credible and you take his testimony as true, then you really only have the opportunity to evaluate the facts and evidence, which we disagree with the findings of the immigration judge, which we find easy to disagree with to some extent because they're erroneous in how they're articulated. The whole case turns or falls on assuming that he was truthful. Correct. Is there evidence that supports, substantial evidence that supports his burden to show entitlement? Well, this Court, I know that I didn't submit anything to cite this case, but Popova v. INS 273 Federal 3rd 1251, the 9th Circuit, 2001, it said that the cumulative circumstantial evidence should not be treated as coincidence. It may be persuasive in establishing motive of the persecutor. So, therefore, the string of events that the immigration judge seemed to, first of all, not be listening very careful to, to which he wasn't listening very carefully. So, we assert a due process violation there for fair and full and fair hearing by a neutral arbiter who's paying attention, but also that it was unfair based on the veracity of the petitioner and the string of events that occurred in a particular timeline that made sense, that the chronology was connected, that it was a nexus between that and one of the enumerated grounds of religion, and that it was unsupportable that it was coincidence or something else less than that. You're over your time, so we'll give you a little bit of time. Okay, thank you, Your Honor. May it please the Court, my name is Jennifer Lightbody, and I represent the Respondent, the Attorney General. Claims in this case can actually be broken down into two separate categories. One are claims that are properly before this Court, which is the asylum issue, and claims that are really in the sufficiency of the evidence, if you will, and claims that are actually not before the Court and for a failure to exhaust. Before this Court, the petitioner has claimed that the immigration judge omitted certain evidence and was hostile to the petitioner during the proceedings. And I would submit, as I did in a 28-J letter this morning under Lew v. Waters, that this was not raised to the board on appeal, and it's a procedural error that could have been corrected by the board if it was true had Petitioner raised it to the board, and so the Court would lack jurisdiction to consider those omissions now, and the issue of hostility. Even if the Court found that it had jurisdiction, those claims are without merit. With respect to the hostility, there's a claim that there's a nexus between the petitioner's prior counsel's withdrawal from the case and statements made by the immigration judge with respect to the availability of the mother and the brother. And those are arguments of counsel about certain snide remarks that the immigration judge made. Of course, we can't detect the inflection of the immigration judge when making those statements, but really the immigration judge was commenting on the lack of cooperating evidence which she was required to be produced in this proceeding. But I would also submit that on page one. Kennedy, why do you say that? Let's go to the cooperating evidence. Now, we have a recent case, Zhu, which says that you cannot require cooperating evidence, and this is post-Real ID Act, you cannot require cooperating evidence absent the need to do so. So what was the need to require cooperating evidence in this case? Well, first of all, let me start by saying that the issue of credibility, there was no issue of credibility in this case. But there is a question of sufficiency of the evidence. And before these proceedings even started, the immigration judge warned the petitioner that he needed to submit cooperating evidence. That was not prejudging the case. The rule is that, you know, if you've got a case to present, you need to submit as much evidence as you have. Granted that, but to require cooperating evidence as a precondition for, and he was obviously quite concerned with cooperating evidence. I'm not sure I've seen, well, I have, but I've never seen as much reference to lack of cooperating evidence. You could have called the mother, you could have called the brother, I mean. And you could have submitted affidavits. I mean, he did give the petitioner a variety of. But usually cooperating evidence comes into play when adverse credibility is put at issue. It's not here. Well, it's also when there's sufficiency of the evidence issues. And in this particular case, that's what's the focus of the immigration judge. Because he said that he couldn't identify any of these attackers in this incident that occurred that's really the heart of his claim. He couldn't identify, and he says, oh, I know that it had to be done because they have a lot of followers. Well, that raises a question of sufficiency. But it goes on to say, I'm just raising a couple of points I'm interested in. So I don't mean to deter you from your argument, but these are issues. The immigration judge goes on to say he could have been in Western garb. There was no evidence of that on the record, was there? From which he could draw an inference? He said he could have been attacked because he looked like a tourist from the West, perhaps he was dressed in some different way. That's just sheer speculation, isn't it? I mean, you have to grant that, the significance. But if I, can I, if. Sure. Well, my response to that is, okay, those are things that he, that wasn't the basis of his decision. He's just sort of saying, well, there are a variety of possibilities. That's why we need cooperating evidence. Right, but then it goes back. For me to be able to make a decision. Yeah, I understand. And I, if I'm interrupting, it's only because I'm interested in a particular point. But it all is related to his conclusion, which it seems to me is the crux of this case, that this was an isolated incident. And he does not mention all of these other instances of the time, the nexus to the time, the attempts, the repeated attempts to convert, the escalating pattern, the chanting of the verses, and so forth. So where's the support for saying this is an isolated incident in the Petitioner's experience? I think what the judge was indicating was that the actual attack was an isolated incident. And that's what the immigration judge was focusing on. And during that incident, he claimed that there were some mumbling and some verses being said. But he didn't say what those verses were, if they were the same as what had been said to him previously, or if it was different. We don't really know from the record. Why would that matter as long as it had a religious context? It would indicate that there was some religious context to the beating, if you're talking about verses, wouldn't it? I mean, I don't. As opposed to a random act of street violence. I don't know what they were. It's not clear from the record. And it doesn't, and there isn't anything in the record to compel that conclusion. And that's what the Petitioner's burden here is today. It's to show what compels the contrary conclusion. And she hasn't, counsel hasn't shown that. I mean, she did make mention of some misstatements, which, about some of the evidence, which, of course, the government's position is that the court doesn't have jurisdiction over that because that wasn't raised to the board. But even if it were, it doesn't have merit. First of all, the immigration judge acknowledged that there were several phone calls that were made, and that was stated in the application, and did, in fact, misstate that there was one phone call that had been made. But that really wasn't the basis of the immigration judge's decision. He was looking at this incident, the attack on the Petitioner, and finding that he couldn't make a connection, that this was he couldn't identify who the individuals were, that it was on account of a protected ground. I mean, and that is the Petitioner's burden to show. It's his burden to show that this is persecution on account of a protected ground, as opposed to a random act of violence, and we don't know. And then the verses do make a difference in that context, you have to admit. The recitation of the verse is true. I don't know. I don't know what that means. And I don't think that the record evidence can tell you that. Well, what's the alternate hypothesis of what it meant? I don't know if that was an interpretation that he's saying, is the verses that, I don't know. I don't know if that is necessarily religious. And I don't think that the record evidence compels the conclusion that it was religious. Or that it was, and even if it were, Your Honor, I don't think that it compels the conclusion that this, that these were the same individuals. I, unfortunately, I don't know the circumstances happening in Egypt and whether that's a common practice. I don't know. Your question, if this was nothing more than an isolated incident in the neighborhood, would that justify the petitioner getting asylum, that alone? The isolated incident alone would be sufficient? No, because he needs to show that it was persecution on account of a protected ground. And he hasn't shown that. He hasn't shown that, I mean, it could be a random act of violence. It could be, there could be a variety of reasons. But it's up to him. It's up to the petitioner to show that it's on account of a protected ground. He's the one coming to the court asking for relief from removal. And it's his burden to show. And if he can't meet that burden, he doesn't qualify for asylum. So, if I understand your answer to Judge Thomas' and Judge Fitzgerald's question. In looking at the portion of the record that Judge Thomas was referring to on AR-49, you would point us, I guess, to the first sentence in the opening paragraph, that particular incident that happened to the respondent appears to be a somewhat isolated incident, although it played out against the background of interfaith problems in Egypt. And then later on in the paragraph, in any event, the respondent does not really know why he was attacked as the crux of his finding that there just wasn't enough nexus. Right. There wasn't. He didn't meet the, it's a sufficiency, this is a sufficiency of the evidence case, not an adverse credibility case. You know, this is not uncommon. And it's a difficult case for the government and for IJs and for us. Because people who are administering beatings generally don't say, I'm here to persecute you on a ground, one of the statutory grounds contained in the INA of the United States. They don't say that. So you have to, either it's an isolated incident of street violence, and sometimes that's the case. Or it's, as Petitioner claims here, is that, look, if nothing else had happened, I agree that I wouldn't be entitled to relief. But here it is. I've had this conversion. People are chanting verses at me. I get beaten up. They're chanting verses at me. We don't know what they are. I go home, my home is vandalized. Verses are left. I mean, that's a different case. How we weigh that, I'm not prejudging, but you'd have to say that's a different case. Well, I would submit, Your Honor, I don't have the exact statistics, but the immigration judges grant thousands of asylum applications a year. About 28 percent, I think. The cases that this Court sees is a small percentage of cases where there is a problem, whether it's adverse credibility, a sufficiency of the evidence. I mean, and so in looking at the full picture here, I mean, the case before this Court is, again, a sufficiency of the evidence. And what he had, his mother was here in the United States, and I know he claims that she was ill, but he didn't submit a medical report to show that she couldn't appear on his behalf. And the immigration judge said, well, what about your brother? Why couldn't your mother have submitted affidavits in support of this? And just going back, just one other thing I'd like to quickly mention is that with respect to the omitted evidence, there was some question about whether the mother actually saw the vandalized apartment. And on page 95 of the record, she he says that she did return to the United States upon learning of this vandalism, and that she went into, she found this note that says, Muslims be safe, or Muslims being safe. She locked the apartment and then went to her sister's. So there is evidence in the record, I think, that the immigration judge could properly find that she actually saw the vandalism in this apartment, or at least spoke to the uncle  So I don't know if that's the case. Roberts. Why would that have made any difference to your analysis? Because, you know, it really comes down to the beating. And nobody saw that but the petitioner, right? So you can have all the corroborating evidence in the world about vandalism and everything else, but his testimony was credited as truthful on that. So why would it have made a difference? Well, because while he was truthful that this is what he believed, it isn't sufficient to show that these were actually the individuals, these Islamic fundamentalists who actually did this, committed this act of violence against him. And it's his burden to show that. And, you know, the mother was at the hospital when he was there. Maybe he had made some statements. I don't know. But the fact is that he could have committed some corroborating evidence, and he didn't. Anything else you want to add? For, again, I don't think the petitioner has shown that the record evidence compels a contrary conclusion, and I would ask that the Court affirm the decision below. Thank you. The Court will allow some time for rebuttal. Sure. Two minutes. With all due respect to Respondent's argument and position, I know that she presented me with her argument regarding the issue of exhaustion. I got that this morning. And in response to that, we would consider that to be an issue that's been waived by Respondent. If Respondent, if the government had been concerned about this issue, that Petitioner had not raised a constitutional claim before the Board of Immigration Appeals sufficiently before presenting it to the Ninth Circuit Court on appeal, then they had every opportunity to present that in Respondent's brief. So even though it's jurisdictional, a party can waive it? Isn't that the difference between a jurisdictional claim and an affirmative defense? And there's a huge difference between the two. I understand that. But the Board of Immigration Appeals can't address a constitutional claim anyway. So I understand she's trying to work it backwards with it being a procedural issue. But the Board of Immigration Appeals could have taken a look at the record. And presumably, they did review the record and saw the errors on the part of the immigration judge, and could have reversed it at any time. I don't think you're answering my question. Okay. There's a distinction here that I think you're glossing over between a jurisdictional issue, i.e., a failure to exhaust which deprives us of the power to even look at the issue, and an affirmative defense which assumes jurisdiction, but which is nonetheless waived, if not timely raised. I understand the distinction. And this is a jurisdictional issue. It is a jurisdictional issue. But my concern is that even if it were remanded back to the Board of Immigration Appeals My question is, am I right? It can't be waived. We either have jurisdiction or we don't. Possibly it's considered appropriately brought before this Court in the first instance because the Board of Immigration Appeals can't address. So we just declare that we have jurisdiction when we don't. Well, it is a constitutional claim. It depends on whether it's substantive or procedural. That's what you're saying, right? Right. So why don't you address, you're out of time, but why don't you address the incident and why wasn't the immigration judge entitled to draw a different inference from the circumstances? I believe that the oral decision that the immigration judge rendered did not accurately reflect the evidence that was submitted on testimony and by written documentation. And there was corroborative written documentation that was submitted along with the record, country reports, articles, information on cops being cop to Christians being persecuted in Egypt. When you take everything together that the immigration judge stated in his oral decision combined with the evidence, the facts that are in evidence, we don't believe that it was a matter of reasonable surmising and piecing together all the evidence to come up with a conclusion that he did. And it's – it would be hard to tell if he had something else on his mind when he made the decision because the words that he chose and articulated to reflect the basis for his decision don't accurately reflect the facts and evidence. So it's really apples and oranges. He's making comments and statements about erroneous elements of testimony that didn't exist. He's misstating testimony. And it's more than one event. It's not just about one telephone call or the mother seeing the vandalized apartment. And frankly, there's no difference between him having been beaten up and trying to allege that the attackers are the ones with the threatening verses, for her to go see an apartment and say, I don't know who did this. So it wouldn't have added to the overall analysis. But we do believe that it's very significant that when a judge provides a neutral and full and fair hearing, that due process is respected and provided for the petitioner. In this case, we do not feel that it was because of the immigration judge's multiple errors. Thank you, counsel. Thank you. The case is heard. We thank you both for your arguments.
judges: Thomas, Tallman. Fitzgerald